UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL DOSS,

                Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS,

                Defendant.

Case No. 20-10266

Paul D. Borman
United States District Judge

_____/

## OPINION AND ORDER GRANTING DEFENDANT MICHIGAN DEPARTMENT OF CORRECTIONS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 49)

This is an employment discrimination case arising out of Plaintiff Michael Doss's employment with Defendant Michigan Department of Corrections (MDOC) as a corrections officer starting in 2006. Plaintiff alleges that he has been subjected to a hostile work environment and disparate treatment based on his race (African American), and retaliated against for engaging in protected activity, since December 2017. Now before the Court is Defendant MDOC's Motion for Summary Judgment (ECF No. 49), which has been fully briefed. The Court held a hearing on Defendant MDOC's Motion for Summary Judgment on Wednesday, April 6, 2022. For the

1

reasons that follow, Defendant MDOC's Motion for Summary Judgment is GRANTED and Plaintiff's claims are DISMISSED WITH PREJUDICE.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A.    Plaintiff's Employment with MDOC

Plaintiff Michael Doss began his employment with Defendant MDOC in November 2006 as a corrections officer (CO) at MDOC's Parnall Correctional Facility (Parnall), in Jackson, Michigan. (ECF No. 49-2, Deposition of Michael Doss (Doss Dep.) at p. 16, PageID.950.) During his tenure with MDOC, Plaintiff has been promoted from corrections officer to Sergeant in 2010, to Lieutenant in approximately 2012, and to Captain in approximately 2015. (*Id.* at pp. 30-32, PageID.964-66.) Plaintiff was "bumped"[1] down to Lieutenant in February 2018, as a result of a reduction in force, and then promoted to "Acting" Captain in late 2020, and to Captain in June 2021. (ECF No. 49-33, Deposition of David Shaver (Shaver

---

[1] Michigan Civil Service Commission (MCSC) Regulation 2.01 establishes the standard to implement staff reductions at the MDOC and provides that, in a reduction in force, an employee whose position has been eliminated can displace, or "bump," a less senior employee in a classification in which the employee previously worked. That displaced, or "bumped," employee can then move into a less senior role and "bump" that less senior employee from his or her position. Employment preference during a reduction in force or "bumping" situation is determined by an employee's total continuous service at MDOC. (ECF No. 49-9, Michigan Civil Service Commission (MCSC) Regulation 2.01, PageID.1299-1308.)

Dep.) at pp. 59-61, PageID.1851-53) (ECF No. 49-34, June 7, 2021 Promotion Letter, PageID.1883.)[2]

During the relevant time period, Plaintiff has worked First Shift (5:15 a.m. to 1:15 p.m.) from 2012 to February 2018; Second Shift (1:15 p.m. to 9:15 p.m.) from February 2018 to June 2018; and First Shift again, from June 2018 to present. (Doss Dep. at p. 33, PageID.967.)

### 1.    December 2017 Parnall Employee Christmas party and MDOC investigation

The Parnall Correctional Facility employee Christmas party was held on Saturday, December 16, 2017, at the Gene Davis and Sons Banquet Hall in Jackson, Michigan. (ECF No. 49-6, Deputy Warden Lee McRoberts 12/19/2017 MDOC Complaint (McRoberts Compl.), PageID.1241.) Plaintiff did not attend the party. (Doss Dep. at p. 107, PageID.1041.)

Near the end of the party, Parnall's Deputy Warden, Lee McRoberts, moved from his table to sit at a table consisting of Captain Frank Sawyer and his wife, Lieutenant Bryan Hughes and his wife, and Correctional Officer Gail Crittenden.

---

[2] The Michigan Civil Service Commission Rules provide that an appointing authority may appoint an employee into an "acting" or "working out of class" role for 26 pay periods before permanently filling that position. (ECF No. 49-16, MCSC 4.5, *et seq.*, Working-Out-of-Class Rules.)

(McRoberts Compl., PageID.1241.) During the ensuing conversation, Sawyer remarked that he heard McRoberts was applying for Warden roles, and that he (Sawyer) did not want a "n-word" Deputy Warden, if McRoberts should leave. (*Id.*) (ECF No. 36, Plaintiff's Second Amended Complaint (SAC) ¶ 23.) According to McRoberts, Sawyer had been talking about a negative experience he had with an African-American supervisor at another prison, and that he did not want to go through that experience again. (McRoberts Compl. PageID.1245.) McRoberts promptly responded to Sawyer that his comment was offensive and inappropriate. (*Id.*) The party broke up shortly thereafter. (*Id.*)

The next business day, Monday, December 18, 2017, McRoberts contacted Parnall Warden Melinda Braman to report Sawyer's racial comment at the off-site holiday party on December 16th. (ECF No. 49-37, Declaration of Warden Melinda Braman (Braman Decl.) ¶ 3, PageID.2022) (ECF No. 53-3, Declaration of Lee McRoberts (McRoberts Decl.) ¶ 3, PageID.2856.) At that time, Braman and McRoberts discussed that McRoberts would: (1) draft a memorandum on the circumstances of Sawyer's conduct; and (2) speak to a discriminatory harassment counselor (or coordinator) to refer Sawyer's conduct for investigation. (Braman Decl. ¶ 3, PageID.2022; McRoberts Decl. ¶ 3, PageID.2856.)

4

That same day, Plaintiff called McRoberts to report that he had heard about Sawyer's racial slur from another party attendee (who wished at that time to remain anonymous),[3] and that he thought the slur was directed at him. (McRoberts Decl. ¶ 4, PageID.2857) (McRoberts Compl., PageID.1241-42) (Doss Dep. at pp. 106-07, PageID.1040-41.) Plaintiff testified in his deposition that he believed the slur was directed at him because he "had been working close to Lee McRoberts," he "had aspirations of promoting to the deputy warden" role, he "was an African American male and ... eligible to promote to deputy warden," and that he had heard "from word of mouth" that Sawyer "had been going around calling [Plaintiff] Deputy Doss and things like that[.]" (Doss Dep. at pp. 112-13, PageID.1046-47.) McRoberts states that he assured Plaintiff that he was addressing the issue. (McRoberts Decl. ¶ 5, PageID.2857.)

The next day, December 19, 2017, McRoberts submitted a memorandum to Warden Braman summarizing the December 16th event, and he also filed a discriminatory harassment complaint against Sawyer on the matter. (McRoberts Compl., PageID.1237-46.)

---

[3] At his deposition, Plaintiff stated that he was contacted by Sergeant Jeff Robinson on December 18, 2017, and that Robinson reported to Plaintiff that he heard, from other co-workers, about Sawyer's comment at the Christmas party. (Doss Dep. at pp. 106-07, PageID.1040-41.)

Two days later, on December 21, 2017, Plaintiff separately filed a discriminatory harassment complaint against Sawyer regarding the same incident. (ECF No. 49-7, Doss 12/21/17 Compl., PageID.1249-52.) In his complaint, Plaintiff stated that he was not present when Sawyer made the racial slur, but that he was told about it during a phone call from an anonymous source, and he believed the statement was about him. (*Id.*) The anonymous person had sent Plaintiff a letter, indicating that the information provided was told to the author by another employee who was at the table. (Doss Compl., PageID.1252.) Plaintiff reported that he was told that Sawyer told McRoberts "You can't go anywhere. I don't want a n***er for a boss." (*Id.* PageID.1250-52.)

The MDOC investigated the McRoberts and Doss discriminatory harassment complaints by: (1) interviewing all named witnesses to the incident, including the subject of the investigation, Sawyer; (2) collecting and reviewing documentary evidence; and (3) drafting a memorandum investigative report dated February 16, 2018. (ECF No. 49-8, MDOC Investigation Report, PageID.1255-97.) Sawyer admitted to the investigator that he said "I hope we don't get a n***er for a deputy" during a conversation at the Christmas party, but contended that the statement was not directed at a particular person, and instead referred to his poor treatment by his former supervisor at another facility. (*Id.* PageID.1256, 1259-60.) The investigator

6

determined that Sawyer violated two Work Rules, and, following a disciplinary conference, Sawyer was given a five-day, unpaid suspension. (*Id.* PageID.1296-97)

Plaintiff testified that he "was satisfied that it [the incident] was investigated." (Doss Dep. at p. 113, PageID.1047.)

### 2. The February 2018 reduction in force and Plaintiff's "bump" to Lieutenant

In February 2018, the MDOC did not renew Warden Tony Stewart's work contract. (Braman Decl. ¶ 6, PageID.2023.) Although Stewart worked at a different MDOC facility,[4] pursuant to MCSC Regulation 2.01 on Bumping, Stewart had "bumping" rights down to an Inspector position at Parnall. (Braman Decl. ¶ 6, PageID.2023.)[5] Stewart's "bump" to Inspector at Parnall displaced the current Inspector, Jake Lafave, who was then "bumped" from his Inspector position to a Captain role at Parnall. (*Id.* ¶¶ 7, 9.)[6] Lafave "bumped" Plaintiff from his Captain

---

[4] The record does not state at which MDOC facility Stewart worked as Warden.

[5] As explained in footnote 1 *supra*, MCSC Regulation 2.01 provides that, in the event of a reduction in force, an employee can displace, or "bump," a less senior employee in a classification in which the employee has previously worked, with employment preference determined by an employee's total continuous service at MDOC. (MCSC Regulation 2.01 on Bumping, PageID.1299-1306.)

[6] Stewart elected to use his accrued leave time until he retired, and thus he never actually went to Parnall to fulfill the Inspector duties. (Braman Decl. ¶ 6, PageID.2023.) Since Stewart was on leave, Warden Braman elected to have Jake Lafave, who had been "bumped" from the Inspector position to Captain, displacing Plaintiff, assume the Acting Inspector duties at Parnall, while serving as Captain.

position, and Plaintiff was afforded employment preference to an open Lieutenant's position at the Charles Engler Reception and Guidance Center (RGC). (*Id.* ¶¶ 8, 11, PageID.2023-24.) Plaintiff accepted that position. (ECF No. 49-35, Declaration of HR Director Jonathan Patterson (Patterson Decl.), ¶ 11, PageID.1888, citing Ex. 2, 2/2/18 Letter at PageID.1917-18.)

Plaintiff, however, wanted to stay at Parnall, and another Lieutenant, John Rockey, who worked on Second Shift at Parnall, volunteered to laterally transfer to RGC in lieu of Plaintiff. (*Id.* ¶¶ 12-14, PageID.2024-25.) Warden Braman, along with the Warden from RGC, took the necessary steps to allow Plaintiff to remain at Parnall as the Second Shift Lieutenant, and for Rockey to transfer to RGC in lieu of Plaintiff. (*Id.*) (Doss Dep. at pp. 125-27, PageID.1059-61.)

Job "bumps" are not decided by the MDOC Wardens, but are guided by the MCSC Rules. (Braman Decl. ¶¶ 15-16, PageID.2025.) MDOC Human Resources (HR) Director, Jonathan Patterson (an African-American male) made the "bump" decisions – and explained that the "bump" decisions stemmed from strict adherence to MCSC Regulation 2.01. (Patterson Decl., ¶¶ 4-5, PageID.1886-87.)

---

(*Id.* ¶ 10, PageID.2024.) Braman explained that she selected Lafave to serve in this Acting capacity because he had held the permanent role, did the job well, and was experienced. (*Id.*)

8

### 3.    April 2018 Formal Written Counseling

On April 3, 2018, Plaintiff was issued a written performance counseling notice from Deputy McRoberts for failing to ensure that a critical Post Incident Review report was submitted timely by his then-Lieutenant, Scott McAllister (the report was due in January 2018, when Plaintiff was still Captain, but it was submitted 30 days late). (ECF No. 49-19, Notice of Formal Counseling, PageID.1459.) Plaintiff declined to sign the counseling notice. (*Id.*) Plaintiff had previously issued a written performance counseling notice to Lt. McAllister (a Caucasian), on February 15, 2018, for the same failure to submit a timely report. (*Id.* PageID.1469.)

Plaintiff filed a grievance regarding this counseling notice on April 9, 2018, asking that it be removed from his file. (ECF No. 49-19, 4/9/18 Grievance No. 09-51-0001-18, PageID.1460-64.) The grievance was denied. (*Id.*) Plaintiff admits that this corrective action was not disciplinary, although it could lead to discipline if the employee's performance did not improve. (Doss Dep. at pp. 65-66, PageID.999-1000.)

### 4.    MDOC creates the Assistant Deputy Warden (ADW) role

In or around September 2018, the MDOC created the Assistant Deputy Warden (ADW) role. Parnall's then-Inspectors, Jake Lafave and Violet Stone, were

selected to fill those two roles at Parnall. (Braman Decl. ¶ 17, PageID.2025) (ECF No. 49-12, Pl.'s Resp. to RFAs, Nos. 6-7, PageID.1321.)

These personnel changes left two vacant Inspector positions, and a vacant Captain's role, at Parnall. (Braman Decl. ¶ 17, PageID.2025.) Warden Braman accepted a lateral transfer, Brock Simmons, who currently served in an Inspector role at another facility, to fill one of the Inspector positions, and chose Shane Gray to fill the other Inspector position, in an "Acting" capacity, for about a year. (Braman Decl. ¶¶ 18-20, PageID.2025-26.) Gray previously served as an Inspector at a different MDOC facility, and in fact trained Plaintiff when he was hired in 2006. (*Id.* ¶ 20, PageID.2026.) (Doss Dep. at p. 128, PageID.1062.) Plaintiff was one of the individuals considered for the Acting Inspector role, but Braman explained that, at that time, two Parnall Lieutenants were out on leaves of absence, and thus she did not want to further deplete custodial staff leadership at Parnall by choosing Plaintiff to fill the Acting Inspector role. (Braman Decl. ¶¶ 20-22, PageID.2026.) (ECF No. 49-14, August emails re: Acting Inspector position, PageID.1349.)

### 5. Plaintiff declined offered recall to an open Captain position

Under MCSC Regulation 3.09, *et seq.*, a displaced employee, like Plaintiff, is eligible for recall to the position he or she once held before the "bump." (Patterson Decl. ¶ 14, PageID.1888, citing MCSC Regulation 3.09, at PageID.1920-32.)

Regulation 3.09 provides that an employee may be removed from the Recall List under certain circumstances, including: (a) failing to accept an offered recall position; (b) failing to respond to an inquiry regarding possible employment; (c) an indication of a lack of interest in an employment opportunity; and (d) an expiration of recall rights. (*Id.* ¶ 15, PageID.1889, citing MCSC Regulation 3-2.4, PageID.1922.)

Because Plaintiff had been displaced from his Captain position as a result of the reduction in force in February 2018, he was placed on the Recall List for vacant Captain positions within MDOC. (Patterson Decl. ¶¶ 16-17, PageID.1889, citing List, PageID.1933.)

In the Fall of 2018, MDOC offered Plaintiff a recall to an open Captain position at the Cooper Street Facility, which is located adjacent to Parnall. (*Id.* ¶¶ 18-19, PageID.1889.) (Doss Dep. at pp. 135-36, PageID.1069-70.) (ECF No. 49-13, Captain Recall Emails, PageID.1332-40.) Plaintiff did not accept the recall offer, and thus his Recall Rights were extinguished, pursuant to MCSC Regulation 3-2.4. (Captain Recall Emails, PageID.1332-40) (Patterson Decl. ¶ 20, PageID.1889.)

11

### 6. Plaintiff's Second Discriminatory Harassment Complaint - September 2018

On September 12, 2018, Plaintiff filed a second discriminatory harassment complaint, against "Captain Sawyer, Deputy McRoberts and Parnall." (ECF No. 49-14, Doss 9/12/18 Complaint.) Plaintiff complained that McRoberts failed to report Sawyer's racial slur "and was never disciplined for it," that Plaintiff "continue[s] to have to interact with Capt. Sawyer daily," and that Deputy Warden McRoberts treats Plaintiff like an "outcast," bypassed him for an Acting Inspector role, and did not include him on interview panels. (*Id.* PageID.1345.) Plaintiff complained that he was being retaliated against for filing his prior discriminatory harassment complaint in December 2017. (*Id.*)

The MDOC investigated Plaintiff's complaint, including interviewing and/or receiving questionnaire responses from numerous individuals, and gathering over 20 evidentiary exhibits. (ECF No. 49-15, MDOC Investigation of September 2018 Complaint.)

In February 2019, the MDOC issued its investigative report, finding that there was insufficient evidence to support Plaintiff's allegations against Warden Braman, Deputy McRoberts, or Captain Sawyer. (*Id.* PageID.1354-57.) Specifically, the investigator concluded:

12

- McRoberts reported Sawyer's racial slur prior to Plaintiff submitting his complaint;
- While Plaintiff was among the top three candidates considered for the Acting Inspector role, Warden Braman ultimately chose a qualified employee for that role based on the financial needs of the facility;
- Plaintiff was asked to sit on four interview panels in 2018;
- Plaintiff's level of interaction with McRoberts changed because Plaintiff no longer directly reported to him, and there were two additional ranking officers (Captain and ADW) above Plaintiff; and
- There is insufficient evidence that, subsequent to being disciplined for the December 2017 incident, Sawyer joked about the discipline he received as a result of the incident.

(*Id.* PageID.1371-72, 1383-84, 1396-97.)

Plaintiff concedes that the investigator treated him fairly: "I think she did okay." (Doss Dep. at p. 157, PageID.1091.)

### 7. Plaintiff's January 2019 Performance Counseling and July 2019 Written Reprimand

On January 3, 2019, Plaintiff was issued a written performance counseling notice by his Captain, Jeffrey Lang, for his failure "to notify the Deputy Warden (or ADW in the absence of the Deputy Warden) of placing a prisoner in temp holding/or other holding area within the facility." (ECF No. 49-20, January 2019 Notice of Formal Counseling, PageID.1473-74.) MDOC's Policy Directive 04.05.120 states that the individual who makes the holding cell decision must tell the ADW or Deputy Warden. (*Id.*) The Counseling Notice states that prisoner "#503467 was placed in

13

holding cell 44-1-10 for threatening behavior at 0823 hours. The Deputy Warden or the ADW was not notified of this prisoner being placed in a holding cell nor was this information logged in the ... daily blotter." (*Id.*) Plaintiff did not sign the counseling notice. (*Id.*)

Plaintiff filed a grievance regarding this written counseling notice, complaining that he believes the counseling has "no merit and is another form of retaliation by Warden Braman, Deputy Warden McRoberts and the Parnall Correctional Facility Administration." (ECF No. 49-20, Grievance No. 09-51-0002-19, PageID.1475-79.) Plaintiff concedes that he did not tell ADW Stone about placing the prisoner in temporary holding, but asserts he instead "had a conversation with Insp. Simmons" and then "emailed a packet to Insp. Simmons, Acting Insp. Shane Gray and Transfer Coordinator Andrea Cronk." (*Id.*) Plaintiff also attached a copy of a page from the confidential prison logbook in support of his grievance. (*Id.* PageID.1476-77.)

Plaintiff's grievance was ultimately denied by the Michigan Civil Service Commission because a written counseling is "not a tangible adverse employment action and thus an unauthorized subject for a grievance appeal under CSC Rule 8-2.2." (*Id.* PageID.1486-87.) The denial letter explains that "[a] tangible adverse employment action is an act by an employer or employer's agent that objectively,

14

substantially, and negatively affects an employee's job, income, benefits or employment status." (*Id.*)

However, Plaintiff's act of copying and attaching the confidential prison logbook pages to his grievance violated MDOC's Work Rules (WR No. 4: Misuse of State or Other Agency Property or Equipment, and WR No. 54: Misuse of Recording Devices or Recorded Information). Thus, on July 24, 2019, Plaintiff received a Written Reprimand for these work rule violations from his supervisor, Capt. Sheryl Bailey, after a disciplinary conference, and pursuant to a Settlement Agreement. (ECF No. 49-21, Written Reprimand, PageID.1489-90.)

### 8.   Plaintiff applies for Captain and Inspector positions in 2019

In the Spring of 2019, two permanent positions opened at Parnall: (1) Captain – vacant due to Jake Lafave's promotion to ADW; and (2) Inspector – currently held by Shane Gray in an "acting" capacity. (Braman Decl. ¶ 25, PageID.2027.)

Plaintiff applied for the Inspector position in early 2019, and he was selected for an interview, along with 12 others. The hiring panel consisted of: ADW Lafave (Caucasian male); ADW Lloyd Blackman (African American male); and HR Tech Paula Johnston (Caucasian female). (ECF No. 49-3, Doss's Positions Applied, PageID.1186.) The hiring panel ultimately selected Jason Lavigne (an Acting Inspector at a different facility) for the Inspector position. (*Id.*) Plaintiff was not in

the top 3 candidates for the Inspector position – Shane Gray (the former acting Inspector) and Sheryl Bailey (an African-American female) rounded out the top three (along with Lavigne). (*Id.*)

Plaintiff also applied for the Captain position around that same time. He was again selected for an interview, along with nine others. (*Id.* PageID.1184-85.) The hiring panel consisted of: HR Analyst Victoria Gibbs (African American female); ADW Violet Garner (nee Stone) (Caucasian female); and DW Dave Shaver (Caucasian male). (*Id.*) In May 2019, the panel selected Sheryl Bailey, an African American female, and a current Captain at a different prison, to fill the Captain position. (*Id.*) Plaintiff again was not in the top three candidates for that position – consisting of Matthew Armstrong, Jeremy Stephenson, and Bailey. (*Id.*)

### 9. Plaintiff files his third discriminatory harassment complaint in September 2019

On September 20, 2019, Plaintiff filed a third discriminatory harassment complaint, this time against Warden Braman and Parnall "Administration," claiming that he did not get the Captain position in May 2019 in retaliation for his prior discriminatory harassment complaints. (ECF No. 49-24, Plaintiff's 9/20/19 Complaint, PageID.1542-45.) Plaintiff did not mention the Inspector position in this complaint.

The MDOC investigated Plaintiff's complaint, including conducting interviews and/or obtaining responses to questionnaires from 11 individuals, including Plaintiff and the hiring panel members, and reviewing additional evidentiary exhibits. (ECF No. 49-25, September 2019 MDOC Investigation, PageID.1560.)

In November 2019, the MDOC issued its investigative report, finding insufficient evidence of any wrongdoing by MDOC, Warden Braman, Deputy Warden McRoberts, or the hiring panel members. (*Id.* PageID.1568.) The investigation concluded that "all three members of the interview panel" had "no knowledge of the complaint filed by Michael Doss in December 2017," and thus "insufficient evidence to show the reason he was not selected as one of the top three candidates for the interview was due to retaliation." (*Id.*) The investigation further concluded that "there appears to be insufficient evidence to show Warden Braman retaliated against Michael Doss for filing the December 2017 complaint, as her selection of Sheryl Bailey for the position of Captain was based on the recommendation of the interview panel." (*Id.*)

### 10.   Alleged discriminatory comments by other employees

Plaintiff complains that some of his coworkers have made discriminatory comments about him during his employment with MDOC. He contends that Shane

17

Gray told Plaintiff that he could not spell "venison" when the two were discussing hunting, and that he felt that this was a racial comment "insinuating that [Plaintiff] being a Blackman just can't spell venison, [he] can't hunt[.]" (Doss Dep. at p. 212, PageID.1146; SAC ¶ 64.) Plaintiff also testified that he heard that Jeremy Leffler (a corrections officer) made a comment about Plaintiff in 2018 that "all you got to do to get [Plaintiff] to do some work is give [him] some fried chicken and Hennessy." (Doss Dep. at p. 209, PageID.1143). Doss also testified that Gerald Schneider (a corrections officer, now retired) told Plaintiff in 2020 that he was "not a real Blackman 'cause I don't eat barbeque ribs and fried chicken and macaroni and cheese or something" (Doss Dep. at p. 210, PageID.1144.) Plaintiff however did not report these comments to Defendant.

### 11.    Plaintiff is promoted to Captain

In late Summer 2020, an "acting" Captain role opened at Parnall due to an employee's retirement, and Deputy Warden McRoberts and acting Warden Shaver asked Plaintiff to fill the "acting" Captain duties; Plaintiff accepted. (ECF No. 49-33, Deposition of David Shaver (Shaver Dep.) at pp. 59-61, PageID.1851-53) (ECF No. 49-36, Declaration of Jake Lafave (Lafave Decl.), ¶¶ 29-30, PageID.1982.) A few months later, Plaintiff applied, interviewed for, and was offered a Captain role

at Parnall – which he accepted. (ECF No. 49-34, 6/7/21 Promotion Letter, PageID.1883.)

### B. Procedural History

On November 7, 2019, Plaintiff filed a complaint in the Wayne County Circuit Court, asserting claims against Defendants MDOC and Frank Sawyer for violations of the Michigan Elliot-Larsen Civil Rights Act (Counts I-III), against Defendant MDOC for violations of Title VII of the Civil Rights Act of 1964 (Counts IV-V), and against Defendant Sawyer for violation of the Equal Protection Clause of the United States Constitution (Count VI). (See ECF No. 1, State Court Complaint, PageID.7-28.)

Defendants removed the case to this Court based on federal question jurisdiction. (ECF No. 1, Notice of Removal.) On February 13, 2020, Plaintiff filed an Amended Complaint (as ordered by the Court), in the correct font size, but with the same counts and parties as the original Complaint. (ECF No. 6, First Amended Complaint (FAC).)

On March 16, 2021, the Court granted Plaintiff's (Partially Unopposed) Motion for Voluntary Dismissal of Counts IV, V, and VI of His First Amended Complaint (Plaintiff's federal law Title VII claims and equal protection claim), and dismissed those claims without prejudice. (ECF No. 30.) The Court stated that it

19

would continue jurisdiction over Plaintiff's state law Michigan ELCRA claims, and ordered Plaintiff to file an amended complaint, containing Counts I, II and III, in compliance with the Opinion and Order. (*Id.*)

Plaintiff filed his Second Amended Complaint on April 12, 2021, asserting Counts I, II, and III (violations of the Michigan ELCRA) against Defendant MDOC only. (ECF No. 36, Second Amended Complaint (SAC).) The Court entered a Stipulated Order Dismissing Defendant Frank Sawyer on May 19, 2021. (ECF No. 42.)

On August 30, 2021, Defendant MDOC filed the instant motion for summary judgment. (ECF No. 49, Def.'s Mot.) Defendant argues that Plaintiff's ELCRA disparate treatment race discrimination claim fails because he cannot establish a prima facie case of discrimination. Defendant contends that Plaintiff fails to show: (1) that he suffered a materially adverse employment action; (2) that he was treated less favorably than similarly situated employees outside his protected class; or, (3) that the choice of Lavigne or Bailey over Plaintiff for the Inspector and Captain positions, respectively, in 2019 gives rise to an inference of discrimination.

Defendant further argues that Plaintiff's ELCRA hostile work environment claim fails because he cannot show intolerable working conditions that substantially interfered with his work, and instead identifies only three or four alleged remarks,

admits he never felt physical intimidation, and twice chose to remain at Parnall with his coworkers. Defendant also contends that it thoroughly investigated Plaintiff's complaints and took prompt remedial action.

Finally, Defendant asserts that Plaintiff's retaliation claim fails because he cannot show that his protected activity was a "significant factor" in an alleged action, and thus cannot show causation. Defendant further argues that it has established legitimate, nondiscriminatory business reasons for its decisions, and that Plaintiff has failed to show that those reasons are a pretext for discrimination.

Plaintiff filed a Response in opposition to Defendant's motion on October 13, 2021. (ECF No. 52, Pl.'s Resp.) Plaintiff contends that he has direct evidence to support his retaliation claim based on Sawyer's racial slur in December 2017, because he was qualified for the open Captain position in 2019, and he was labeled a snitch and ostracized by other employees following his complaint. Plaintiff further contends there is indirect evidence supporting his retaliation claim because Sheryl Bailey's testimony that the MDOC manipulates the hiring process to select whoever they want creates a question of fact regarding retaliation, and she testified that she was "shocked" that she received the Captain position instead of Plaintiff.

Plaintiff argues that he has direct evidence of disparate treatment race discrimination because after he complained of Sawyer's racial slur, he was demoted,

labeled a snitch, and passed over for multiple job opportunities. He also contends he has indirect evidence of discrimination because he was qualified for the Captain position and was passed over for a less qualified employee.

Finally, Plaintiff argues that he can show a prima facie case of a hostile work environment based on Sawyer's racial slur in December 2017 "at a crowded table," and that Defendant took no action until Plaintiff complained to McRoberts two days later. Plaintiff contends that, in return for reporting this comment, he was demoted and later passed over for a less qualified candidate when the role opened up again.

On October 22, 2021, Defendant filed a reply brief. (ECF No. 53, Def.'s Reply.) Defendant argues that Plaintiff's retaliation claim fails because it is undisputed that not one of the hiring panel members knew about Plaintiff's complaints, and thus they cannot have refused to promote Plaintiff based on a complaint they knew nothing about. Further, the evidence shows that Plaintiff was not the "most qualified" candidate for either position, he had no recall rights to the Captain position, Bailey (African American female), who received the Captain position, is the same race as Plaintiff, and Bailey's testimony regarding Plaintiff's qualifications is just lay opinion testimony on a legal conclusion, and does not concern retaliation. Further, Plaintiff's February 2018 "bump" to Lieutenant stemmed from a reduction in force, other employees were also "bumped" in that

22

same reduction in force, and the bumping decision came from the HR Director, who did not know about Plaintiff's 2017 complaint.

Defendant argues that Plaintiff fails to show an "inference" of discrimination in support of his disparate treatment claim. Defendant points out that Plaintiff does not complain about his non-selection to the Inspector position, that Sawyer (the individual with the alleged discriminatory animus) was not on the hiring panel for the Captain position and did not decide to "bump" Plaintiff, and Bailey, who was ultimately selected for the Captain position, is the same race as Plaintiff.

Finally, Defendant argues that Plaintiff's Response brief fails to establish a hostile work environment claim because a single reported comment is not legally actionable. Further, Plaintiff never felt physically intimidated by any co-worker, he chose to remain at Parnall, and he fails to rebut Defendant's prompt and remedial investigation and discipline of Sawyer, which he testified satisfied him.

## II. LEGAL STANDARD

Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of a motion for summary judgment where proof of that fact 'would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense

asserted by the parties.'" *Dekarske v. Fed. Exp. Corp.*, 294 F.R.D. 68, 77 (E.D. Mich. 2013) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"In deciding a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party." *Perry v. Jaguar of Troy*, 353 F.3d 510, 513 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). At the same time, the non-movant must produce enough evidence to allow a reasonable jury to find in his or her favor by a preponderance of the evidence, *Anderson*, 477 U.S. at 252, and "[t]he 'mere possibility' of a factual dispute does not suffice to create a triable case." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 576 (6th Cir. 2004) (quoting *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). Instead, "the non-moving party must be able to show sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008) (quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)). "The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. The plaintiff must

present more than a mere scintilla of the evidence. To support his or her position, he

or she must present evidence on which the trier of fact could find for the plaintiff."

*Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000) (internal quotation marks and

citations omitted). "'The central issue is whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one

party must prevail as a matter of law.'" *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th

Cir. 2010) (quoting *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005)).

That evidence must be capable of presentation in a form that would be admissible at

trial. *See Alexander v. CareSource*, 576 F.3d 551, 558–59 (6th Cir. 2009).

## III. ANALYSIS

### A.    Plaintiff's Michigan ELCRA Retaliation Claim

Plaintiff alleges in his Second Amended Complaint that Defendant retaliated

against him "for filing complaints regarding Defendant's discriminatory and

unlawful practices," and that he "has been denied many promotions in retaliation for

his protected civil rights activity." (SAC ¶¶ 90-94.) In his deposition, Plaintiff

specifically alleges retaliation by Warden Braman and Deputy Warden McRoberts

based on: (1) the two performance counseling notices he received in April 2018 and

January 2019; (2) the written reprimand he received in July 2019; (3) his "bump"

from Captain to Lieutenant in February 2018; and (4) his non-selection for the

25

Captain and Inspector positions in May 2019. (Doss Dep. at pp. 139-40, 214-16, PageID.1073-74, 1148-50.) Plaintiff has since been promoted to Captain.

### 1.   Retaliation claim under the Michigan ELCRA statute

Pursuant to the Michigan ELCRA statute, a person shall not "[r]etaliate … against a person because the person has opposed a violation of [ELCRA], or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." Mich. Comp. Laws § 37.2701(a). Proof of discriminatory and/or retaliatory treatment under the ELCRA "may be established by direct or indirect or circumstantial evidence." *Lowe v. Walbro, LLC*, 972 F.3d 827, 832 (6th Cir. 2020) (citing *Sniecinski v. Blue Cross & Blue Shield of Mich.*, 469 Mich. 124 (2003)). "Cases brought pursuant to the ELCRA are analyzed under the same evidentiary framework used in Title VII cases." *In re Rodriguez*, 487 F.3d 1001, 1007 (6th Cir. 2007).

To establish a prima facie case of retaliation under the ELCRA, a plaintiff must satisfy the following elements: (1) he engaged in protected activity; (2) the defendant knew of the exercise of protected rights; (3) the defendant took an action that was "materially adverse" to the plaintiff; and (4) there is a causal connection between the plaintiff's protected activity and the defendant's adverse employment

26

action. *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 343-44 (6th Cir. 2021)

(citing *El-Khalil v. Oakwood Healthcare, Inc.*, 504 Mich. 152, 160-61 (2019)).

If the plaintiff establishes his prima facie case, the burden shifts to the

defendant to demonstrate some "legitimate, nondiscriminatory reason" for its action.

*Id.* at 344 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If

the defendant produces such a reason, the burden shifts back to the plaintiff to show

that the proffered reason was a mere pretext for discrimination. *Id.* (citing

*McDonnell Douglas*, 411 U.S. at 804). The ultimate burden, however, remains with

the plaintiff to convince the factfinder that the defendant retaliated against him for

engaging in protected activity. *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d

497, 504 (6th Cir. 2014).

### 2.    Whether Plaintiff can establish causation

Defendant argues that it is entitled to summary judgment on Plaintiff's

retaliation claim because Plaintiff cannot satisfy the causation prong of his prima

facie case. (Def.'s Mot. at pp. 22-23, PageID.926-27.)

To meet the causation prong of his prima facie case of retaliation, Plaintiff

must demonstrate that there was a causal connection between his protected activity

and the adverse employment actions taken against him, meaning that but-for his

protected activity, the adverse employment actions would not have happened *See*

*Jackson*, 999 F.3d at 348-49 n.5 (noting that "the causation element of Title VII and the ELCRA are the same"); *see also Beard v. AAA of Michigan*, 593 F. App'x 447, 452 (6th Cir. 2014) (reasoning that Michigan courts would interpret the ELCRA to require but-for causation).

Defendant asserts that the hiring panel members for both the Captain and Inspector positions in 2019 did not have any knowledge of Plaintiff's 2017 complaint about Sawyer's comment, and thus could not have made the hiring decisions *because of* Plaintiff's complaint, and that Warden Braman merely accepted the recommendations of both panels. (Def.'s Mot. at pp. 22-23, PageID.926-27.) Defendant further contends that Plaintiff concedes that he broke MDOC work rules by making copies of the confidential prison logbook, which he attached to his grievance, and Defendant asserts that other employees in fact received harsher discipline for breaking the same rules. And, Defendant continues, the performance counseling notices Plaintiff received were not disciplinary and never affected his pay, hours, or position, and thus are not considered adverse or retaliatory. (*Id.*)

Plaintiff argues in Response that he has presented both direct and indirect evidence of causation in this case. (Pl.'s Resp. at pp. 12-17, PageID.2099-2104.) He relies in part on the "close temporal proximity between the protected activity and the adverse actions," contending that as soon as he made his complaint in December

28

2017 regarding Sawyer's comment, "he was labeled a snitch [by one staff member], demoted from a captain to a lieutenant, and passed over for multiple job opportunities that he was more than qualified to hold." (*Id.* at pp. 13-14, PageID.2100-01.)

> As the Sixth Circuit Court of Appeal noted in 2021 in *Jackson*:

> Temporal proximity between the protected activity and the adverse employment action is an important category of circumstantial evidence. *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 664-65 (6th Cir. 2020). In the past, this court has "denied summary judgment where a defendant took adverse action against a plaintiff just a few months after learning of his or her protected activity." *Id.* (collecting cases).

*Jackson*, 999 F.3d at 349. However, "[t]he law is clear that temporal proximity, standing alone, is insufficient to establish a causal connection for a retaliation claim." *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007); *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 471-72 (6th Cir. 2012). Rather, "[w]hether protected activity was the but-for cause of an adverse employment action depends upon the context in which that action occurs." *Kenney v. Aspen Technologies, Inc.*, 965 F.3d 443, 448 (6th Cir. 2020) (citation omitted). "Exceptions to this rule are 'rare,' even in instances involving relatively short time periods." *Id.* (citation omitted) Further, "an intervening legitimate reason" to take an adverse

employment action "dispels an inference of retaliation based on temporal proximity." *Wasek*, 682 F.3d at 472.

Here, Plaintiff engaged in protected activity when he filed discriminatory harassment complaints with the MDOC in December 2017, September 2018, and September 2019. He complains that, as a result of these complaints, he was demoted in February 2018, received two written counseling notices in April 2018 and January 2019, a written reprimand in July 2019, and he did not receive the Captain and Inspector positions in May 2019.

The Court finds that, even if temporal proximity could provide a suggestion of causation here, at least with regard to some of the employment actions Plaintiff complains of, such temporal proximity, alone, is insufficient to establish causation because Plaintiff has failed to present any other evidence establishing a link between the protected activity and the employment actions he complains about.

It is true that Plaintiff was "bumped" down from Captain to Lieutenant in February 2018, approximately two months after his December 2017 complaint about Sawyer's remark. However, Defendant has presented unrebutted summary judgment evidence that the "bump" occurred as a result of a reduction in force at the MDOC, pursuant to MCSC Regulation 2.01, and also involved two Caucasian employees. As explained above, "an intervening legitimate reason" to take an adverse

30

employment action "dispels an inference of retaliation based on temporal proximity." *Wasek*, 682 F.3d at 472. Further, the person responsible for administering the "bump," HR Director Patterson, did not know of Plaintiff's engagement in protected activity, and thus that activity could not have been a significant factor in the action.

With regard to his July 2019 written reprimand, which occurred approximately ten months after his September 2018 complaint, Plaintiff does not dispute that he violated the MDOC work rules by making copies of the confidential prison logbook, or that others received even harsher discipline for violating the same rules. Again, Plaintiff has failed to present any summary judgment evidence supporting an inference that this reprimand was in retaliation for engaging in protected activity at least ten months prior.

With regard to the interviews for the Captain and Inspector positions in May 2019, which occurred about eight months after Plaintiff's second complaint, Plaintiff has failed to present any summary judgment evidence disputing that the hiring panel members for both positions had no knowledge of Plaintiff's protected activity, and thus they could not have made their selection decisions for either position *because of* his engagement in protected activity. Warden Braman accepted the recommendations of both panels. *See Crane v. Mary Free Bed Rehab. Hosp.*, 634 F.

App'x 518, 526 (6th Cir. 2015) ("An employment decision cannot be caused by protected activity if the decision-maker did not know about the protected activity.").

Plaintiff's subjective and conclusory assertion that he was "more qualified" for the Captain position because he previously held that position, and that "everyone expected [him] to get the position," fails to support causation. It is undisputed that Plaintiff no longer had recall rights to the Captain position, because he had previously declined a recall to a Captain position at a nearby facility; he chose to stay at the Parnall facility. Defendant has presented evidence in its motion for summary judgment that Plaintiff was not the most qualified candidate, based on the number of years with the MDOC, experience in the applicable position, and education. (See Def.'s Reply at p. 2, PageID.2837, citing ECF Nos. 49-35 and 49-36.)

Plaintiff has failed to present any evidence comparing his qualifications with those of the selected candidates. His reliance on opinion testimony by Capt. Sheryl Bailey that Plaintiff was "absolutely qualified" and that she was "shocked" he did not receive the Captain position (that she received), as direct or circumstantial evidence of retaliation fails. Bailey's testimony is simply lay opinion testimony by a non-decisionmaker, and thus fails to support Plaintiff's retaliation claim. *See Kinch v. Pinnacle Foods Grp., LLC*, 266 F. Supp. 3d 1014, 1028 (E.D. Mich. 2017)

32

(Edmunds, J.) (rejecting opinions of other employees regarding plaintiff's work performance because "these were not decisionmakers" and "[a] disagreement and subjective belief about the quality of the plaintiff's job performance is '[i]n essence a mere disagreement with the corporation's business judgment and does not create an issue of fact.'") (citations omitted). Plaintiff even concedes in his Response brief that "Captain Bailey did not know why [Plaintiff] was not selected for the role[.]" (Pl.s' Resp. at p. 6, PageID.2093.)[7]

Thus, Plaintiff has not provided evidence of causation and he fails to establish a prima face case of retaliation under the ELCRA. However, even if the Court were to find that Plaintiff has proffered the minimal evidence of causation necessary to establish a prima facie case, the Court finds that he fails to establish pretext, for the reasons discussed below.

---

[7] Plaintiff also complains in his Response brief that he was "labeled a snitch and ostracized by other employees." He stated in his deposition that a staff member, Josh Curtis, and possibly "other unknown staff" referred to him as a "snitch" at some unknown time, but he does not otherwise state how this resulted in an adverse employment action. (Doss Dep. at p. 142, PageID.1076.) His complaints that he "was no longer allowed to work closely with Deputy Warden Lee McRoberts" and "was no longer given the responsibilities of giving directions to Frank Sawyer and Jeff Lange, the other two captains at Parnall," are a result of his "bump" to Lieutenant in February 2018, and are not retaliatory material adverse employment actions. *See Creggett v. Jefferson Cnty. Bd. of Educ.*, 491 F. App'x 561, 569 (6th Cir. 2012) (holding that plaintiff's perception that his supervisor "shunned and avoided him is not a materially adverse action" supporting a retaliation claim).

### 3.   Whether Plaintiff can show pretext

Under the *McDonnell Douglas* burden shifting analysis, if Defendant demonstrates a legitimate non-discriminatory reason for its actions, Plaintiff can demonstrate that the reason(s) given for the actions were pretext by:

> [S]howing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct. The plaintiff must produce sufficient evidence from which the jury could reasonably reject [the defendant's] explanation and infer that the defendant[ ] did not honestly believe in the proffered nondiscriminatory reason for its adverse employment action. To show an honest belief, the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made.

*Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 526 (6th Cir. 2008) (citations and internal quotations omitted.

Defendant argues that, even if Plaintiff could meet his prima facie burden of retaliation, his retaliation claim would still fail because Defendant has articulated legitimate, nondiscriminatory reasons for the various employment actions Plaintiff complains of, and Plaintiff cannot show that Defendant's reasons are pretextual. (Def.'s Mot. at pp. 23-24, PageID.927-28.). Defendant presents summary judgment evidence that the six individuals on the two interview panels (for the Captain and Inspector positions in 2019) did not know Plaintiff had filed a complaint in December 2017, and that they opined that Plaintiff was not the top candidate during

34

the interview processes. Plaintiff's recall rights to the Captain position were extinguished previously, so he had no right to the Captain position in 2019. Plaintiff's 2018 "bump" to the Lieutenant position stemmed from a reduction in force pursuant to MCSC policy, was administered by HR Director Patterson who did not know about Plaintiff's complaint, and two Caucasian employees were also "bumped" in that same reduction in force. Further, Plaintiff concedes that he violated the Work Rule for which he was issued a Written Reprimand in 2019, and other employees who violated the same Work Rule received harsher discipline. (*Id.*)

Plaintiff does not dispute that Defendant has articulated legitimate, non-discriminatory reasons for its employment actions, but argues in his Response brief that he can show that Defendant's actions are pretextual and have "no basis in fact." Plaintiff contends he was more qualified for a Captain position, which he previously held. Plaintiff further argues that there was "no conceivable valid basis" for his "bump" to Lieutenant because there are "no indications his performance was slipping," and there were "no occurrences of [Plaintiff] violating any MDOC rules." Plaintiff also relies on the testimony of Capt. Sheryl Bailey, an African American who received the Captain position in 2019, that Plaintiff was "absolutely qualified," that she was "shocked" she received the position instead of Plaintiff, and that the interviewing process could be manipulated. (Pl.'s Resp. at pp. 15-17, PageID.2102-

04.)[8] Plaintiff does not otherwise address in his Response brief the Inspector position

he applied and interviewed for in 2019, or other employment actions, and thus has

waived such argument. *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482,

486 (6th Cir. 2011) ("When a motion for summary judgment is properly made and

supported and the nonmoving party fails to respond with a showing sufficient to

establish an essential element of its case, summary judgment is appropriate.") (citing

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)); *see also Hicks v. Concorde*

*Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011) ("The district court properly

declined to consider the merits of this claim because [the plaintiff] failed to address

it in either his response to the summary judgment motion or his response to [the

defendant's] reply brief"); *Conner v. Hardee's Food Sys.*, 65 F. App'x 19, 24-25

(6th Cir. 2003) (finding that the plaintiff's failure to brief issues relating to one of its

claims in the district court amounted to an abandonment of that claim).

---

[8] Plaintiff contends in his Response brief that Defendant MDOC has a history of retaliation and a "culture of corruption." (Pl.'s Resp. at pp. 7-10, PageID.2094-97.) Plaintiff cites to trial testimony, from an unrelated case, by Stephen Marschake, the former head of Internal Affairs at MDOC, and Teleferio Witcher, the former union president. (*Id.*) However, as Defendant explains in its Reply brief, that testimony has no bearing on Plaintiff's claims in this case, and concerns a different administration at the MDOC that preceded Plaintiff's complaint by a least two years. Plaintiff makes no allegations regarding Marschke in this case, and admits that he never met Witcher, and that Witcher never worked at Parnall. Thus, the Court disregards this argument by Plaintiff as irrelevant to the summary judgment analysis.

The Court finds that Defendant has articulated legitimate business reasons for its employment actions, and that Plaintiff fails to show pretext.

Defendant explains that Plaintiff was "bumped" to Lieutenant in February 2018 as a result of a reduction-in-force. This "bump" was not related to any performance issues or work rule violations on any employee's part. Rather, the "bump" was implemented as part of a reduction in force, pursuant to MCSC Regulations, by HR Director Patterson, who had no knowledge of Plaintiff's prior complaint. Plaintiff has failed to present any summary judgment evidence rebutting this valid, nondiscriminatory, non-retaliatory basis for the "bump," which also impacted two other individuals.

Defendant has presented unrebutted evidence, with regard to the Captain position in 2019, that the three-member interview panel decided, after conducting all interviews, to award the position to Sheryl Bailey, as the superior candidate. Plaintiff fails to show that this decision had "no basis in fact." Defendant explained that (1) Plaintiff no longer had recall rights to that Captain position when he applied for the position in 2019, and thus the fact that Plaintiff previously held the position is irrelevant; (2) the interview panel members had no knowledge of Plaintiff's previous complaint; and (3) the panel selected Bailey for the position based on her merits and her interview. "[P]laintiff's subjective claim that []he was more qualified

does not create a question of fact on whether the [Defendant's] proffered reason for the [promotion/hiring] decision is pretextual." *White v. Dep't of Transp.*, 334 Mich. App. 98, 110 (2020) (citing *Hazle v. Ford Motor Co.*, 464 Mich. 456, 476 (2001)).

Further, Bailey's deposition testimony does not create circumstantial evidence supporting Plaintiff's retaliation claim. It is undisputed that she was not a decisionmaker with regard to the Captain position, and thus her lay opinion testimony about Plaintiff's qualifications, and her conjecture regarding MDOC's interview process in general, shed no relevant light on Plaintiff's retaliation claim. *See Kinch*, 266 F. Supp. 3d at 1028 (rejecting opinion testimony by three former employees regarding the quality of the plaintiff's work performance because they were not decisionmakers). Plaintiff even concedes in his Response brief that "Captain Bailey did not know why [Plaintiff] was not selected for the role[.]" (Pl.s' Resp. at p. 6, PageID.2093.).

Moreover, Defendant presents summary judgment evidence that, in addition to the panel members' testimony that they believed Bailey was the superior candidate for the Captain position, that Bailey in fact had more years with MDOC than Plaintiff (19 years versus 13 years for Plaintiff), was a Captain at the time she applied for the Captain position at Parnall (while Plaintiff was a Lieutenant), had the same years of experience as a Captain as Plaintiff, and also had 7 years of experience

as a Resident Unit Officer, which Plaintiff did not have. (Def.'s Reply at p. 2, PageID.2837.)

Taking the evidence in the light most favorable to the non-moving party, the Court finds that Plaintiff has not provided evidence from which a reasonable jury may reject Defendant's proffered reasons for its employment actions, and therefore grants Defendant's motion for summary judgment as to Plaintiff's ELCRA retaliation claim.

## B.   Michigan ELCRA Disparate Treatment Claim

Plaintiff alleges in Count I of his SAC that Defendant "was predisposed to discriminate on the basis of race and/or color and acted in accordance with that disposition," "treated Plaintiff differently from similarly situated Caucasian employees in the terms and conditions of employment, on the unlawful basis of race and/or color," and denied Plaintiff "several promotions based on race and/or color." (SAC ¶¶ 77-83.)

### 1.   Disparate treatment claims under the Michigan ELCRA statute

The Michigan ELCRA statute provides that an employer may not "discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color,

national origin, age sex, height, weight, or marital status." Mich. Comp. Laws §

37.2202(a). Michigan courts regularly look to federal Title VII caselaw for guidance

in interpreting the ELCRA, because the ELCRA is "clearly modeled after Title VII

…." *Rasheed v. Chrysler Corp.*, 445 Mich. 109, 123 n.20 (1994).

"A plaintiff may establish a claim of discrimination either by introducing

direct evidence of discrimination, or by proving circumstantial evidence which

would support an inference of discrimination." *Johnson v. Univ. of Cincinnati*, 215

F.3d 561, 572 (6th Cir. 2000). "Direct evidence" is "evidence which, if believed,

requires the conclusion that unlawful discrimination was at least a motivating factor

in the employer's actions." *Hazle*, 464 Mich. at 462 (quoting *Jacklyn v. Schering-

Plough Healthcare Products Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)).

If a plaintiff does not present direct evidence of discrimination, he must prove

disparate treatment through the *McDonnell Douglas* burden-shifting framework.

*Johnson*, 215 F.3d at 572. This framework requires the plaintiff to first set forth a

prima facie case of employment discrimination by presenting evidence that (1) he

belongs to a protected class, (2) he suffered an adverse employment action, (3) he

was qualified for the position, and (4) others, similarly situated and outside the

protected class, were treated more favorably. *See Ondricko v. MGM Grand Detroit,

LLC*, 689 F.3d 642, 653 (6th Cir. 2012); *see also Hazle*, 464 Mich. at 463

(identifying the fourth element, in that case, as "the job was given to another person under circumstances giving rise to an inference of unlawful discrimination."). "When a plaintiff 'has sufficiently established a prima facie case, a [rebuttable] presumption of discrimination arises.'" *Hazle*, 464 Mich. at 463-64.

"[O]nce a plaintiff establishes a prima facie case of discrimination, the defendant has the opportunity to articulate a legitimate, nondiscriminatory reason for its employment decision in an effort to rebut the presumption created by the plaintiff's prima facie case." *Id.* at 464 (citations omitted).

If the defendant gives a legitimate, nondiscriminatory reason for the employment decision, the presumption of discrimination is rebutted, "and the burden shifts back to the plaintiff to show that the defendant's reasons were not the true reasons, but a mere pretext for discrimination." *Sniecinski v. Blue Cross & Blue Shield of Mich.*, 469 Mich. 124, 134 (2003). "At that point, in order to survive a motion for summary disposition, the plaintiff must demonstrate that the evidence in the case, when construed in the plaintiff's favor, is 'sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff.'" *Hazle*, 464 Mich. at 465 (quoting *Lytle v. Malady (On Rehearing)*, 458 Mich. 153, 176 (1998)). As above, to establish that the proffered reason was pretext, a plaintiff must show that the reason: (1) had

41

no basis in fact; (2) was not the actual reason; or (3) was insufficient to explain the defendant's action. *Johnson*, 215 F.3d at 573. "[T]he ultimate factual inquiry in any discrimination case is whether unlawful discrimination was a motivating factor in the employer's decision." *Hazle*, 464 Mich. at 470.

### 2.    Plaintiff's disparate treatment claim

Defendant argues that Plaintiff's disparate treatment claim in Count I of his Second Amended Complaint fails because he cannot establish a prima facie case of discrimination. (Def.'s Mot. at pp. 13-17, PageID.917-21.) As stated above, to establish a prima facie case of discrimination, Plaintiff must show that (1) he belongs to a protected class, (2) he suffered an adverse employment action, (3) he was qualified for the position, and (4) others, similarly situated and outside the protected class, were treated more favorably. *See Ondricko*, 689 F.3d at 653; *Hazle*, 464 Mich. at 463. Defendant argues that Plaintiff fails to establish the second and fourth prongs of his prima facie case. (Def.'s Mot. at pp. 13-17, PageID.917-21.)

### a.    Prong 2 - material adverse employment actions

Defendant contends that Plaintiff alleges three employment actions that are not considered materially adverse with regard to Plaintiff's disparate treatment claim: (1) his 2019 written reprimand; (2) that he was "questioned about moves that I make to regulate prisoner movement or settle disagreements between prisoners;"

and (3) that on one occasion the warden failed to introduce him to other staff at a meeting. (Def.'s Mot. at pp. 1, 14, PageID.905, 918, citing Doss Dep. at p. 216, PageID.1150.) Defendant contends that Plaintiff has failed to present any evidence that these three actions caused a pay diminution, job transfer, poor performance review, or change in hours, and they therefore do not constitute materially adverse employment actions because they did not result in a "materially adverse change in the terms or conditions … of employment because of [the] employer's conduct." (Def.'s Mot. at p. 14, quoting *Banks v. Principi*, 386 F. Supp. 2d 921, 926 (E.D. Mich. 2005).)

Plaintiff does not address this argument in his Response brief, and the Court finds that Plaintiff has failed to establish that these three actions constitute materially adverse employment actions for purposes of his disparate treatment claim. *See Creggett*, 491 F. App'x at 566 ("A written reprimand, without evidence that it led to a materially adverse consequence such as lowered pay, demotion, suspension, or the like, is not a materially adverse employment action.") (citations omitted); *Howard v. Bd. of Educ. of Memphis City Sch.*, 70 F. App'x 272, 280 (6th Cir. 2003) (finding that racially insensitive comments, verbal reprimands, and inconvenient and disruptive changes like the reassignment of a teacher from her classroom did not, "individually or collectively," constitute an adverse employment action).

43

Defendant also acknowledges that Plaintiff bases his disparate treatment claim on his "bump" from Captain to Lieutenant in February 2018, and the "denial" of promotions to Captain and Inspector in 2019. (Def.'s Mot. at p. 1, PageID.905.) Defendant does not contend that these actions could not be considered "adverse employment actions." The Court finds that these are considered adverse employment actions for purposes of Plaintiff's disparate treatment claim. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."); *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 994 (6th Cir. 2009) (listing "termination, failure to promote, denial of transfer, or refusal to hire" as discrete acts under Title VII) (internal quotation marks omitted).

### b.    Prong 4 – Inference of discrimination

Defendant argues Plaintiff cannot satisfy the fourth prong of his prima facie case because he has not shown that he was treated less favorably than similarly situated employees outside of his protected class. Defendant contends that Plaintiff's "bump" to Lieutenant in February 2018 as part of a reduction in force, and Defendant's selection of Bailey and Lavigne for the Captain and Inspector positions, respectively, in 2019, do not give rise to an inference of discrimination. (Def.'s Mot.

44

at pp. 15-17, PageID.919-21.)[9] Defendant explains that the "bump" was part of a reduction in force at MDOC when Warden Stewart's contract was not renewed. It was controlled by MCSC regulations, and approved by HR Director Jonathan Patterson (an African American), who knew nothing about Plaintiff's December 2017 complaint against Sawyer. In addition, two other Caucasian employees (Tony Stewart and Jake Lafave) were also "bumped" to lower positions during this same reduction-in-force. (*Id.*)

As for Plaintiff's non-selection for the Captain and Inspector positions in 2019, Defendant argues that the mere selection of Bailey and Lavigne instead of Plaintiff for those positions, alone, does not give rise to an inference of discrimination. (Def.'s Mot. at pp. 15-17, PageID.919-21, citing *Hazle*, 464 Mich. at 471.) "As a matter of law, an inference of unlawful discrimination does not arise merely because an employer has chosen between two qualified candidates," because

---

[9] Defendant also argues that Plaintiff has not shown that Defendant treated Plaintiff less favorably than similarly situated employees outside his protected class with regard to his 2019 written reprimand. (Def.'s Mot. at p. 14, PageID.918.) Plaintiff has failed to respond to this argument and the Court agrees with Defendant. Defendant has presented evidence that other individuals, who were not in Plaintiff's protected class, were in fact given *harsher* discipline for engaging in the same or similar conduct (violation of Work Rule No. 4). (*Id.*, citing Braman Decl. ¶ 34, PageID.2028-29 and Ex. 3 thereto, PageID.2037-40.)

"an equally – if not more – reasonable inference would be that the employer simply selected the candidate that it believed to be most qualified for the position." *Hazle*, 464 Mich. at 471.

Plaintiff argues in Response only that he was "known to be qualified for the captain's job as he previously held the position, the people interviewing him felt that he was qualified, and the person who ended up getting the job knew that [Plaintiff] was absolutely qualified." (Pl.'s Resp. at p. 19, PageID.2106.)[10] Plaintiff then summarily concludes that he "would have been promoted to captain in May of 2019" if he "was not an African American man...." (*Id.*) Plaintiff also complains of Sawyer's racial statement at the Christmas party in December 2017. (*Id.* at p. 18, PageID.2105.) Plaintiff, however, does not mention his non-selection for the Inspector position in 2019 in his Response brief regarding his disparate treatment claim, and thus is found to have waived his claim regarding that position. *See Stansberry*, 651 F.3d at 486.

---

[10] The Court notes that Plaintiff contends that he can present direct and indirect evidence of discrimination. However, in support of his direct evidence claim, Plaintiff cites primarily retaliation case law and claims that he was retaliated against for complaining about Sawyer's racial comment in December 2017. (Pl.'s Resp. at p. 18, PageID.2105.) Plaintiff fails to present "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *See Hazle*, 464 Mich. at 462 The Court finds that Plaintiff fails to present any direct evidence of discrimination.

The Court finds that Plaintiff fails to present evidence supporting the fourth prong of his prima facie case of his disparate treatment claim – circumstances giving rise to an inference of discrimination with respect to the 2018 "bump" and the 2019 Captain position. Defendant has presented summary judgment evidence that the "bump" was part of a reduction in force, and that Defendant followed the strictures of MCSC policy in applying the "bump" to all employees affected. The "bump" was approved and implemented by HR Director Jonathan Patterson, an African American, and there is no evidence of racial bias or even that Patterson knew about Plaintiff's previous complaint about Sawyer's comment. In addition, two Caucasian employees (Stewart and Lafave) were similarly "bumped" in that same reduction in force. Plaintiff simply has failed to present any evidence of racial animus related to his "bump" to Lieutenant in 2018 as a result of the reduction in force.

As for the Captain position in May 2019, Plaintiff has failed to present any summary judgment evidence that anyone on the hiring panel, Victoria Gibbs (African American female), Violet Garner (nee Stone) (Caucasian female), and Dave Shaver (Caucasian male), harbored any discriminatory animus toward Plaintiff. In fact, as stated above, the selected candidate for that position, Sheryl Bailey, is also African American, dispelling any inference that the selection was racially biased against Plaintiff.

47

Plaintiff instead relies on his self-serving assertion that he was qualified for the position, he held that position in the past, and that Bailey was hired instead. (Pl.'s Resp. at p. 19, PageID.2106.) However, Defendant does not argue that Plaintiff was not qualified for the Captain position. There is deposition testimony in this case that all of the individuals selected for interviews met the minimum qualifications for the positions. (ECF No. 49-29, Deposition of Victoria Gibbs (Gibbs Dep.) at p. 12, PageID.1689) (Shaver Dep. at p. 73, PageID.1865.) The Michigan Supreme Court has explained that "we do not mean to suggest that a plaintiff can establish the third and fourth elements of a *McDonnell Douglas* prima facie case merely by showing that he was qualified for the position and that a nonminority candidate was chosen instead." *Hazle*, 464 Mich. at 471. "[E]mployment-discrimination laws do not diminish lawful traditional management prerogatives in choosing among qualified candidates, and an employer has great flexibility in choosing a management-level employee." *Browning v. Dep't of the Army*, 436 F.3d 692, 696-97 (6th Cir. 2006) (citations and brackets omitted). As Defendant asserts, it has presented a legitimate, nondiscriminatory business reason for its hiring decision to select a female African American candidate: the selected candidate's interview performance. (Def.'s Mot. at p. 17, PageID.921.)

48

Further, because Plaintiff had previously declined a recall to a Captain role in 2018, he no longer had recall rights when a Captain position was posted at Parnall in 2019. And, as explained above, Plaintiff's reliance on Bailey's testimony that Plaintiff was "absolutely qualified" for the Captain position does not constitute circumstantial evidence of discrimination, because it is simply lay opinion testimony by a non-decisionmaker, and pursuant to Federal Rule of Civil Procedure 56(c)(2) is not admissible as evidence.

Plaintiff has only offered this Court his subjective belief that he was more qualified than others who were promoted, and that he was discriminated against because of his race. That is wholly insufficient. Taking the evidence most favorably for the non-moving party, the Court finds that Defendant is entitled to summary judgment on Plaintiff's ELCRA disparate treatment claim.

## C.   Michigan ELCRA Hostile Work Environment Claim

Plaintiff alleges in his Second Amended Complaint that he was "subjected to unwelcome and heinous verbal conduct due to his race and/or color," that he "complained about the unwelcome verbal conduct, stating that it was clearly based on his racial status," and that Defendant "allow[ed] the unwelcome conduct to affect a term or condition of employment … thus creating an intimidating and hostile work environment." (SAC ¶¶ 84-89.)

49

1.     **Hostile work environment claim under the Michigan ELCRA statute**

There are five elements that are needed to establish a prima facie claim of a

hostile work environment under the ELCRA:

> (1) the employee belonged to a protected group; (2) the employee was
> subjected to communication or conduct on the basis of the protected
> status; (3) the employee was subjected to unwelcome conduct or
> communication on the basis of the protected status; (4) the unwelcome
> conduct or communication was intended to, or in fact did, interfere
> substantially with the employee's employment or create an
> intimidating, hostile, or offensive work environment; and (5)
> respondeat superior.

*Downey v. Charlevoix Cnty. Bd. of Rd. Comm'rs.*, 227 Mich. App. 621, 629 (1998).

"A hostile work environment claim is actionable only when, in the totality of

the circumstances, the work environment is so tainted by harassment that a

reasonable person would have understood that the defendant's conduct or

communication had either the purpose or effect of substantially interfering with the

plaintiff's employment, or subjecting the plaintiff to an intimidating, hostile, or

offensive work environment." *Radtke v. Everett*, 442 Mich. 368, 398 (1993).

To succeed, a plaintiff must show his "workplace is permeated with

'discriminatory intimidation, ridicule, and insult[ ]" that is "'sufficiently severe or

pervasive to alter the conditions of [his] employment and create an abusive working

environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations

50

omitted). In determining whether an environment is sufficiently hostile or abusive, the Court must consider the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998). "'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' " *Id.* at 788.

### 2. Plaintiff's ELCRA hostile work environment claim

### a. No severe or pervasive conduct

Defendant argues that Plaintiff's ELCRA hostile work environment claim fails because he cannot establish evidence of race-based harassment severe or pervasive enough to alter the conditions of his employment and create an abusive working environment. (Def.'s Mot. at pp. 17-20, PageID.921-24.) Defendant contends that Plaintiff bases his hostile work environment claim on only a few remarks over a 15 year period:

- Sawyer's December 2017 racial slur at a dinner that Plaintiff did not attend;

- Shane Gray told Plaintiff that he could not spell "venison" when the two were discussing hunting (Doss Dep. at p. 212, PageID.1146; SAC ¶ 64);

- Jeremy Leffler (a corrections officer) made a comment in 2018 that "all you got to do to get [Plaintiff] to do some work is give [him] some fried chicken and Hennessy" (Doss Dep. at p. 209, PageID.1143; SAC ¶ 50);

- Gerald Schneider (a corrections officer, now retired) told Plaintiff in 2020 that he was "not a real Blackman 'cause I don't eat barbeque ribs and fried chicken and macaroni and cheese or something" (Doss Dep. at p. 210, PageID.1144.)

(Def.'s Mot. at p. 18, PageID.922.) Plaintiff testified in his deposition that he reported all discriminatory harassment he experienced and witnessed at MDOC (Doss Dep. at pp. 62-63, PageID.996-97), but the record evidence only contains the report about the 2017 Sawyer comment. Thus, there is no record evidence that Plaintiff ever filed a complaint about these other incidents. Further, none of them is discussed in his Response to the instant motion. In any event, Defendant argues that such sporadic offensive and unwelcome language is insufficient to create a hostile work environment, as a matter of law. (*Id.*, citing *Langlois v. McDonald's Rests.*, 149 Mich. App. 309, 385 (Mich. App. 1986); *Burnett v. Tyco, Inc.*, 203 F.3d 980 (6th Cir. 2000).) Defendant also argues that there is no evidence that the alleged remarks "substantially interfered" with Plaintiff's work at Parnall because he stated that he never felt physically intimidated, he chose to remain at Parnall more than once, and even rejected a transfer to a higher position at the Cooper Street facility, and his performance reviews by his superiors always stated that he met expectations. (*Id.* at p. 19, PageID.923.)

In his Response brief, Plaintiff starts by generally discusses the law regarding retaliation claims, not hostile work environment claims, and then contends that "the use of the word 'n[***]er,' even taken in isolation, is not a mere offensive utterance." (Pl.'s Resp. at pp. 20-23, PageID.2107-10, quoting *Johnson v. United Parcel Serv., Inc.*, 117 F. App'x 444, 454 (6th Cir. 2004).)[11] Plaintiff states that the offensive statement was made "at the MDOC's [2017] Christmas party at a crowded table that included the deputy warden." (*Id.* at p. 24, PageID.2111.) However, Plaintiff fails to identify any case law finding a hostile work environment based on a single offensive utterance, no matter how offensive, that was thoroughly investigated and dealt with to his satisfaction. It is well settled that "offhand comments" and "isolated incidents" do not suffice to establish a hostile work environment claim. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 515 (6th Cir. 2009) (quoting *Faragher*, 524 U.S. at 788). Sixth

---

[11] *Johnson v. United Parcel Service, Inc.*, 117 F. App'x 444 (6th Cir. 2004) is readily distinguishable from the facts of this case. In *Johnson*, the Sixth Circuit Court of Appeals did not find a racial harassment claim supported by only a single offensive utterance. Rather, in that case, the Sixth Circuit found that the frequency of the discriminatory conduct was "considerable," including numerous racial comments and racial slurs in the workplace over an extended time period, including the word "n***er" by a division manager, an individual responsible for responding to plaintiff's grievance stating that "he's tired of African Americans complaining," as well as accusations of stealing from the company, and another black employee being struck by a white employee, while emitting racial slurs, and the white employee receiving lenient treatment instead of being terminated, which made the workplace physically threatening. *Id.* at 454-55.

Circuit precedent presents "a relatively high bar for what amounts to actionable discriminatory conduct under a hostile work environment theory." *Phillips v. UAW Int'l*, 854 F.3d 323, 328 (6th Cir. 2017) (noting that in many cases, overtly discriminatory statements and racial slurs did not create a hostile work environment under this standard).

The Court concludes that Plaintiff does not meet this relatively high bar. While the Court can consider Sawyer's comment in 2017 even if Plaintiff did not hear it, *see Nicholson v. City of Clarksville, Tenn.*, 530 F. App'x 434, 442 (6th Cir. 2013) ("In evaluating a hostile work environment claim, the Court ... consider[s] even those claims that were not directed at a particular plaintiff and those claims that a particular plaintiff did not witness." (internal quotation marks omitted)), Plaintiff still primarily bases his hostile work environment claim on this single utterance by a coworker, and three other alleged comments by coworkers which he did not report to Defendant, even though he stated in his deposition that he reported all of the discriminatory harassment he experienced to the MDOC. (Doss Dep. at pp. 62-63, PageID.996-97.) Plaintiff also stated that he never felt physically intimidated at Parnall. He, in fact, several times, passed up an opportunity to work at a different facility (even declined to accept a promotion to Captain at an adjacent facility), so that he could remain at Parnall. The test for a hostile work environment claim is not

54

whether a statement was "extremely offensive;" it is whether the harassment was so "severe or pervasive to alter the conditions of employment and create an abusive working environment." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 813 (6th Cir. 2013).

The Court finds, considering the totality of the evidence in the light most favorable to the non-moving party, that Plaintiff has failed to present sufficient evidence of severe or pervasive conduct to support a hostile work environment claim and avoid summary judgment. *See Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 351 (6th Cir. 2005) (finding that three relatively isolated incidents over a period of approximately two and a half years were not pervasive enough to alter the conditions of employment and create an abusive situation); *Burnett*, 203 F.3d at 984 (finding that three alleged incidents of sexual harassment over six months did not create a genuine issue of material fact as to whether the conduct constituted hostile work environment sexual harassment).

### b.    Prompt remedial action

Defendant also argues that Plaintiff cannot establish *respondeat superior* liability for the comments made by various employees because, when Defendant was put on notice of Sawyer's remark (the only comment Plaintiff complains of in his Response brief and the only comment he reported to MDOC), Plaintiff's MDOC

superiors took prompt remedial action, conducted an investigation, and disciplined Sawyer. (Def.'s Mot. at pp. 20-21, PageID.924-25.) His employer did not perpetrate or perpetuate the conduct. *Downey*, 227 Mich. App. at 631-32. An employer who takes "prompt and adequate remedial action after having been put on notice" is not liable for harassment. *Chambers v. Trettco, Inc.*, 463 Mich. 297, 313 (2000); *Elezovic v. Ford Motor Co.*, 472 Mich. 408, 412 n.4 (2005).

In this case, Deputy Warden McRoberts, and thereafter Plaintiff, reported Sawyer's offensive comment, Defendant MDOC promptly and thoroughly investigated the complaints, including interviewing witnesses and collecting evidence, and took prompt remedial action, disciplining Sawyer (a five day unpaid suspension), and assigning him harassment training. Plaintiff does not rebut this evidence; indeed, he testified that he was not dissatisfied with the MDOC investigation. Plaintiff has not presented any evidence that he ever complained to Defendant of any other specific remarks. Plaintiff's second and third discriminatory harassment complaints were similarly thoroughly investigated. The Court finds that Plaintiff fails to establish *respondeat superior*.

Accordingly, the Court grants Defendant summary judgment on Plaintiff's ELCRA hostile work environment claim.

## IV.  CONCLUSION

For the reasons set forth above, the Court, taking the evidence in the light most favorable to Plaintiff, the non-moving party, **GRANTS** Defendant's Motion for Summary Judgment, and **DISMISSES** Plaintiff's claims **WITH PREJUDICE**.

This Opinion and Order closes the case.

IT IS SO ORDERED.

Dated: 4/11/2022

Paul D. Borman
United States District Judge